No. 23972.

COSMOPOLITAN WESTERN HOTEL, EMPLOYER AND EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, INSURER, RESPONDENTS *v.* JOHNNY HENRY AND THE INDUSTRIAL COMMISSION OF COLORADO.

(472 P.2d 134)

Decided July 20, 1970. Rehearing denied August 4, 1970.

ZARLENGO, MOTT and CARLIN, ALBERT E. ZARLENGO, JR., for plaintiffs in error Cosmopolitan Western Hotel and Employers Mutual Liability Insurance Company of Wisconsin.

FRICKEY and MYRICK, WILLIAM E. MYRICK, for defendant in error Johnny Henry.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

THIS is a workmen's compensation case. The claimant, Johnny Henry, sustained injuries arising out of an accident which occurred on January 12, 1966, in the course and scope of his employment as a kitchen employee at the Cosmopolitan Western Hotel. The accident was admitted by his employer. Henry filed his claim for compensation, alleging that as he was turning around a dish rack he slipped on the wet floor, twisted his left knee, and

hit the edge of the rack with his knee as he fell to the floor.

Henry was examined by four orthopedic specialists and underwent three operations on his knee, the last of which was a patellectomy and a fusion of the knee joint.

After maximum recovery Henry was released to go back to work but was unsuccessful in finding employment, being unable to perform physical labor.

Three hearings were held before the Industrial Commission of Colorado, culminating in a supplemental order in which the referee made the following findings:

"Medical estimates of the physical impairment suffered by claimant as a result of this injury run between 30% and 40% of the left leg at the knee. The claimant has a pre-existing hypertrophic arthritis of the left knee and degenerative arthritis of the lumbar spine. He had a previous injury to the same knee in March, 1962.

"At the time of hearing, claimant complains of continued pain, swelling and inability to use his left leg. He ambulates with a cane. As a result of this surgery his knee has been fused and the patella has been removed. Claimant also complains of back pain dating its onset some months after this accident.

"The claimant is at the time of hearing 49 years of age, his date of birth is December 12, 1917. The claimant has a fifth grade education and no specialized training. His work history is of farming, farm labor, construction labor, and other menial tasks, the most skilled being a short period of time as a truck driver. The claimant has attempted to gain employment with the Goodwill Industries but has had difficulty because of swelling in his leg. The claimant testifies that he cannot do any job requiring him to be on his feet because of leg and back pain.

"Medical evidence in the file indicates that the claimant's low back problems, i.e., degenerative arthritis, were aggravated by the claimant's knee problems. The Referee finds that this claimant is disabled in the maximum

amount, short of being permanently and totally disabled from gainful employment, and that this disability amounts to at least 60% as a working unit as a result of the injuries to his left knee and of the aggravation of the claimant's pre-existing arthritic condition in his leg and lumbar spine and also considering the fact of his age, education and qualifications for only manual labor."

On the basis of these findings, an order for permanent partial disability was entered by the referee. Upon petition for review the Industrial Commission entered its supplemental order, finding that Henry's industrial disability was only 25% as a working unit. It affirmed and adopted all other findings of the referee.

Respondents (plaintiffs in error) filed their complaint in the Denver District Court for review and, after hearing, the court affirmed the findings and order of the Industrial Commission.

Respondents assert two grounds for reversal. We find no prejudicial error and therefore affirm the judgment of the trial court.

I.

The first contention is that if a claimant sustains an injury to a member of his body which is scheduled under C.R.S. 1963, 81-12-4, disability benefits cannot be awarded as a working unit, but must be based upon the schedule contained in the statute. We do not agree with this proposition, which was recently examined and rejected in *Industrial Commission v. Seastone,* 167 Colo. 561, 448 P.2d 963. We said that under subsection (7) of C.R.S. 1963, 81-12-4 the Industrial Commission is given discretion to grant a percentage award under the schedule or to rate the claimant under the working unit disability section of the act. 1965 Perm. Supp., C.R.S. 1963, 81-19-9.

"* * * The act in two places uses the phrase 'in the discretion of the commission.' Discretionary power, therefore, rests solely with the commission, and a reviewing court may not interfere with the exercise of that discre-

tion unless there is a clear showing of an abuse thereof." *Industrial Commission v. Seastone, supra.*

We find no showing of an abuse of discretion in the present case.

## II.

The second contention of respondents is that the supplemental order of the Industrial Commission, awarding Henry a disability of 25%, is not supported by the evidence. From our examination the record discloses ample, competent evidence to support the award of the Commission. The evidence in the main is remarkably uncontradicted and without dispute. It is clear that Henry's injury and the necessary resulting treatment, including the operations and knee fusion, left him in a permanently disabled condition which physically disqualified him from performing his usual labors. In evaluating the extent of his disability, the Commission properly took into consideration not only his general physical condition but also his "* * * mental training, ability, former employment and education * * *." 1965 Perm. Supp., C.R.S. 1963, 81-12-9(1)(b).

The main thrust of respondents' argument relates to the finding that "* * * Medical evidence in the file indicates that the claimant's low back problems, *i.e.*, degenerative arthritis, were aggravated by the claimant's knee problems. * * *" It is true that the orthopedic surgeon who operated on Henry specifically reported that the degenerative arthritic condition of the lumbar spine was not the product of, nor was it aggravated by, the accident. However, the evidence was undisputed that the traction treatment necessitated by the knee surgery precipitated the onset of the lumbar complaints. These symptoms were recognized as valid by the orthopedic surgeon who prescribed, not only medication, but also the use of a two-piece steel corset-type back brace which Henry was required to wear during the daytime hours. This evidence, we believe, supports the questioned finding that Henry's degenerative arthritis was *aggravated by his*

*knee problems.* While the use of the term "medical" by the referee may not be strictly correct in a technical sense, certainly it was descriptive generically of the facts which are the basis of the respondents' finding.

 We cannot say that in declaring a functional disability of 25% the Commission's judgment was excessive, as respondents contend, nor will we substitute our judgment for that of the Commission.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE GROVES dissenting.

MR. JUSTICE GROVES dissenting:

I respectfully dissent from the majority's disposition of the respondent's second contention, *i.e.,* that in effect, the evidence supports the Commission's finding that "medical evidence" showed that the "back problems" were the result of the "knee problems." The claimant's back condition consisted of an aggravation of pre-existing arthritis of the spine. There was no evidence that the *accident itself* caused the aggravation. Rather, as the majority opinion points out, the affirmance of the Commission's award is predicated upon a conclusion reached by this court that there was sufficient evidence to demonstrate that the back trouble resulted from the *treatment* of the knee injury. As stated in the majority opinion, the Commission in effect found that "medical evidence" disclosed the connection between the "knee problems" and the "back problems." To me, the term "medical evidence" means an opinion expressed by a medical expert. No medical expert expressed any opinion that the back trouble resulted from treatment of the knee. The only testimony bearing upon causation of the claimant's aggravated back condition was that the claimant began having back pain during the time his knee was being treated.

Assuming *arguendo* that the majority is correct in its conclusion that "medical" in the findings does not mean

an opinion by a medical expert, but rather is a generic description, the connection between the knee treatment and the back pain nevertheless is purely speculative. The claimant had the burden of showing that one injury caused the other and this burden was not sustained by testimony solely to the effect that both occurred at the same time. *United States Co. v. Industrial Com.*, 122 Colo. 31, 219 P.2d 315. I find it difficult to visualize how that burden could be sustained except upon testimony of a qualified expert that the aggravation of the arthritis resulted from the treatment of the knee injury.

I am authorized to state that MR. JUSTICE DAY joins in this dissent.